### PHILADELPHIA & R. RY. CO. v. FESSLER.

(Circuit Court of Appeals, Third Circuit. October 18, 1923. Rehearing Denied December 18, 1923.)

No. 2981.

1. **Master and servant** ⊂⊃286(13, 31)—Issues of negligence as to flagman struck by caboose held for jury.

Evidence that two cars shunted from the main line to a switch, on which caboose was standing under brake, descended by gravity or loco-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

motive push on the caboose with such force that they failed to couple, and on the second impact the caboose was driven two car lengths and struck and killed flagman, *held* to authorize submission of the issues of negligence to the jury.

2. **Master and servant ⟲⇒111(1½)—Instruction on duty to furnish automatic couplers held proper.**

In an action for the death of a flagman, struck by a caboose that failed to couple on impact with other cars, an instruction as to the effect of a violation of the Safety Appliance Act requiring automatic couplers, modifying defendant's request for a charge exonerating it if the couplers were "capable of" coupling by impact, *held* proper.

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Esther H. Fessler, as administratrix of Samuel G. Fessler, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Frank F. Davis, of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the plaintiff, as his administratrix, brought suit against the defendant railroad to recover damages for the loss of her husband, whose death, as she alleged, was caused by its negligence. The deceased was rear flagman of a freight train, the caboose and two cars of which were standing, under brakes, on a Y switch, the rear end leg of which switch crossed a small bridge, a street farther on, and ended in a lumber yard. The proofs of the plaintiff tended to show that a draft of four cars was thereafter shunted by the train from the main line and dropped down the track of the Y, with the intent they should couple with the caboose section already standing on the Y. The section of the Y over which these four cars passed was on a falling grade, so they could descend by gravity. Despite the fact that the brakes were on the cars when they struck the caboose draft, they were under such speed, either from gravity or locomotive push, that when they struck the cars attached to the caboose —all of which were under brake—and failed to couple with them they drove them a car length ahead and followed them up with a second impact, which drove them two cars farther, in all a distance of about 148 feet.

[1] The decedent, who, as we have said, was the rear flagman of the train, had previously gone down to the caboose and had left his lamps on its front end. When the cars made the second impact, he was heard to cry out, and when the cars stopped he was found lying in front of the rear wheels of the car next to the caboose. The only witness of the accident was a very young girl, who said she saw him on the track a few feet behind the caboose and with his back to it when the first impact occurred; that later on, when the second impact occurred, the caboose, which was only a few feet from him, struck him and knocked him down and ran over him. In view of other testimony in the case, the fact

of how far the caboose section moved under the two impacts, and the position of the deceased when found, it is quite evident that the space between Fessler and the caboose when he was on the track behind it must have been considerably greater than she stated; otherwise, he would have been knocked down by the first impact, which by the testimony drove the caboose back some 50 feet. The testimony is silent as to why Fessler was on the track, but we cannot say as a matter of law that he was improperly there, and was in the same position as a trespasser. He may have felt it was his duty to go back and protect people from crossing the street; he may not have known that cars were to be dropped down the siding, or he may have expected the engine to have come down, and in doing so to have sounded a warning before making the coupling. There was ground for contending that he may have supposed the cars coupled on the first impact and there would be no subsequent movement. Moreover, it may be contended he had no reason to expect the impact would be made with the force it was made, and that the cars would be driven the distance they were. These and other possibilities may, in the absence of explanatory testimony, be surmised, but in view of the fact that the cars came down with great force, that they failed to couple on impact, that the caboose was driven the distance it was on the second impact, and that Fessler was killed as a result, we cannot say the case could not go to the jury on proper issues.

[2] Under the pleadings, these issues were two in number: One, a common-law issue of negligence in driving the four cars with undue force against the caboose and its cars; the other was a breach by the railroad of its statutory duty to equip the cars with couplers that would automatically couple. Both these were submitted to the jury in a charge in which we find no error, and no complaint is now made that the proofs generally were not such as to warrant a verdict in favor of the plaintiff. Complaint, however, is made that the court, in charging as to the statutes, erred in that part of its charge which reads as follows:

"That is a positive statutory duty imposed upon this defendant, and if it did not equip all of its cars with these automatic couplers, and the consequence of that omission to equip was the death or injury of any one, and the failure to do it was in that sense the proximate cause of the injury which befell any of its workmen, the judgment of the law follows that the railroad company is responsible. It is not only required to provide these couplers, to equip its cars with them, but the injunction of the law further is that it shall maintain them as the kind of a coupling which the law requires. In other words, it shall not only provide and equip its cars with these automatic couplers, which will couple upon impact, but it must maintain them in such a condition that they will automatically couple upon impact. The plaintiff says to you that this defendant failed in that duty, not wholly failed, but partially failed; that, notwithstanding the fact that it is admitted that it did provide automatic couplers, it did equip these particular cars with automatic couplers, yet when it came to operate the cars and these couplers which it had provided were put to the test—the test is whether they meet the standard of the law, and the standard of the law is couplers that will automatically couple upon impact—that these couplers did not couple upon impact, either because they had not been maintained in proper condition, or they were not originally couplers of the standard which the law requires, and the evidence to which they direct your attention, the fact which they submit should lead your minds to that conclusion, is the fact that they did not automatically couple on impact, and they say that ought to be persuasive to your minds. The question raised is a question of law, and

to make it just as they put it to you I will read what is called the point in charge. That means the thing they ask me to say. What they ask me to do is to say these words to you as declaratory of the law. It is the second point: 'I charge you that under the facts in this case, if you find that the couplers of the cars which were being coupled and are alleged to have been defective were in proper condition of construction and repair, capable of coupling automatically by impact in the manner required by the Safety Appliance Acts [Comp. St. § 8605 et seq.], then you may find that the defendant has performed its legal duty and your verdict should be for the defendant.' If there is one change made in those words, with that change I affirm that point, and those words are 'capable of'—those two words. If you strike them out, and say that they were in such a condition of construction and repair as they would couple automatically by impact, I would affirm that point with this second qualification: It asks me to say to you that upon that finding of fact you should give a verdict in favor of the defendant. I cannot say that to you, because there is the other issue in the case, common-law negligence, and this point does not touch that."

We are of opinion no error was committed by the court in that respect; but, assuming for present purposes that the point was a correct statement of the railroad's duty, nevertheless the defendant's point could not be affirmed as a whole, and the jury instructed to find for the defendant as therein requested, because there still remained the other issue of common law negligence, which the point wholly ignored in asking for binding instructions; but, apart from that, we think the court properly eliminated the element "capable of" before it approved the point, for, unless that was done, the continuing duty of maintenance up to the statutory requirement would have been emasculated.

Finding no error, the judgment will be affirmed.

WOOLLEY, Circuit Judge, dissents.